UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ROGERIO HENRIQUE LOPES,

                    Plaintiff,                    06 Civ. 9927

          -against-                               OPINION

CAFFE CENTRALE LLC AND MANAGER K.C.
LAM AS AIDER AND ABETTOR,

                    Defendants.

------------------------------------X

A P P E A R A N C E S:

          Pro se

          ROGERIO HENRIQUE LOPES
          30-62 32nd St.
          2nd Floor
          Astoria, NY 11103

          Attorneys for Defendants

          EPSTEIN BECKER & GREEN, P.C.
          250 Park Avenue
          New York, NY  10177-1211
          By:  Brian G. Cesaratto, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/16/08

**Sweet, D.J.**

Defendants Caffe Centrale LLC ("Caffe Centrale") and K.C. Lam ("Lam") (collectively, the "Defendants") have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the pro se complaint of plaintiff Rogerio Henrique Lopes ("Lopes") alleging a hostile work environment and a constructive discharge. For the reasons set forth herein, the motion is granted as to the Title VII claims against Defendant Lam, as well as to Lopes' claims alleging discrimination based on race, color, and/or national origin. Defendants' motion for summary judgment is denied as to Lopes' sex discrimination claims.

The difficulties in resolving claims of a hostile work environment are well-recognized. See, e.g., Prince v. Madison Square Garden, 427 F. Supp. 2d 372 (S.D.N.Y. 2006); Zakre v. Norddeutsche Landesbank Girozentrale, 396 F. Supp. 2d 483 (S.D.N.Y. 2005). As explained below, Lopes, a pro se plaintiff, has, however inartfully, raised a factual issue sufficient to defeat the Defendants' motion for summary judgment as to his sex discrimination claims.

## Prior Proceedings

On January 19, 2007, Lopes, formerly a bar-back
at Bottega Del Vino (the "Restaurant"), an upscale
restaurant operated by Caffe Centrale, filed his Amended
Complaint, pro se, alleging that Defendants subjected him
to a hostile work environment and retaliated against him in
violation of Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e-2000e-17 ("Title VII").
Although Lopes did not explicitly assert a claim for
hostile work environment, the factual allegations set forth
in the pro se Amended Complaint suggest assertion of such a
claim, and in the instant motion, the Defendants have so
construed it. Although the Defendants have not addressed
Lopes' claims with regard to state and city law, Lopes'
complaint can also be read to raise claims under the New
York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §
296, and New York City Human Rights Law ("NYCHRL"), N.Y.
City Admin. Code § 8-107 et seq. As "consideration of
claims brought under the state and city human rights laws
parallels the analysis used in Title VII claims," except as
otherwise noted, the Court's conclusions with regard to
Lopes' Title VII claims apply equally to his state and city
claims. Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1

(2d Cir. 2000)) (citing Leopold v. Baccarat, Inc., 174 F.3d
261, 264 n.1 (2d Cir. 1999) (New York state law); Landwehr
v. Grey Adver. Inc., 622 N.Y.S.2d 17, 18 (App. Div. 1st
Dep't 1995) (New York City law)); see also Schiano v.
Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006).

Discovery proceeded and Lopes was deposed. The
instant motion was marked fully submitted on September 12,
2007.

**The Facts**

The following facts are set forth in Defendants'
Rule 56.1 Statement, which was not properly opposed by
Lopes. However, his amended complaint and deposition raise
issues of fact, which are noted below. [1]

---

[1] In light of his pro se status, Lopes' failure to submit a proper
Local Civil Rule 56.1 Statement is not fatal to his opposition here.
See, e.g., McAllister v. New York City Police Dep't, 49 F. Supp. 2d
688, 693 n.2 (S.D.N.Y. 1999) (noting that, despite the failings of the
pro se plaintiff's purported Local Civil Rule 56.1 Statement, "it is
well settled that a pro se's papers are to be read liberally," and
concluding that, "to the extent that [the plaintiff] sets forth facts
based upon personal knowledge in his signed briefs, his affidavits and
his Rule 56.1 Statement, the Court will consider those facts and will
not deem admitted contrary facts in the [defendant's] Rule 56.1
Statement"); Burke v. Royal Ins. Co., 39 F. Supp. 2d 251, 257 (E.D.N.Y.
1999) (addressing the merits of a defendant's motion for summary
judgment against a pro se plaintiff "in light of the entire record
before the Court," despite plaintiff's failure to submit a Local Civil
Rule 56.1 Statement "or to present factual material in evidentiary
form").

3

Lopes was born in Brazil in 1965 and came to the United States in 1990. He worked for over 10 years shining shoes at various establishments, including law firms, and took courses to learn English, enrolling in Manhattan Community College. Lopes was subsequently employed as a busboy at the Boathouse restaurant in Manhattan.

Lopes was then employed as a bar-back at the Restaurant from October 2004 until his termination on June 29, 2006. (Affidavit of K.C. Lam ("Lam Aff.") ¶ 3).

According to Lopes, in early 2005, a customer at the Restaurant, Vicenzo Sciacchitano ("Sciacchitano"), referred to Lopes as "she," "her," "jungle boy," and "third-world boy" to third persons within earshot of Lopes. Lopes alleges that Sciacchitano also blew kisses at him, blew on his neck, and touched him on his waistline and his genitals. According to Lopes, he advised Lam, the Restaurant's manager, of this conduct and requested that Lam ask Sciacchitano to desist. Lopes claims that Lam told him to go along with the Sciacchitano, that Sciacchitano was a homosexual, and that he had a lot of influence with other customers. Lam denies being so advised by Lopes, and

4

also denies having made the statements Lopes attributes to him.

According to Lopes, in late April, 2005, Sciacchitano approached him on the street after the Restaurant's closing time and sought to embrace and kiss him. According to Lopes, he resisted and ended the encounter, but Sciacchitano continued his suggestive conduct when in the Restaurant.

On June 28, 2005, Lopes confronted Sciacchitano while he was dining with another customer at the Restaurant, addressed him as a "faggot," and demanded that he cease his harassment (the "Altercation").

The Restaurant has written rules of employee conduct: "No arguing with the customers for any reason—Call Manager with any issues" and "No arguing or discrepancies in the restaurant." (Def. 56.1 ¶ 5; Lam Aff. Ex. A).

The day after the Altercation, June 29, 2005, Lam and Lopes discussed the Altercation in Lam's office at the Restaurant (the "June 29 Meeting"), at which time Lopes

5

admitted to, and sought to explain, the Altercation. According to Lam, this was the first time that he heard that Lopes had any problems with Sciacchitano. During the June 29 Meeting, Lam told Lopes that his behavior toward Sciacchitano on June 28, 2005, was inappropriate and that unless he apologized to Sciacchitano for the Altercation, his employment at the Restaurant would be terminated.

According to Lopes, when he inquired as to what would happen if his apology were not accepted, Lam stated that Lopes would be fired. Lopes alleges that when he asked Lam if he would have to accede to a request for sexual favors if such a request were made by Sciacchitano, Lam stated, "If that is what it takes him to accept your apology, do it. Do whatever it takes him to accept your apology." (Lopes Dep. at 185). Lam has denied Lopes' version of this conversation.

According to Lopes, faced with these alternatives, he resigned, an act which, had he been more schooled in employment discrimination law, he might have characterized as a constructive discharge.

6

On July 8, 2005, Lopes filed a complaint with the
New York State Department of Human Rights, which issued a
determination of "no probable cause" on April 6, 2006.
(Pl. Aff. in Opp. Ex. G). The Equal Employment Opportunity
Commission issued Lopes a right to sue letter on July 26,
2006.

## The Summary Judgment Standard

In deciding a motion for summary judgment, a
court shall render judgment "forthwith if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett,
477 U.S. 317, 322-23 (1986); Weinstock v. Columbia Univ.,
224 F.3d 33, 41 (2d Cir. 2000). A material fact is one
that would "affect the outcome of the suit under the
governing law," and a dispute about a genuine issue of
material fact occurs if the evidence is such that "a
reasonable jury could return a verdict for the nonmoving
party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d
Cir. 1997).

The moving party has the initial burden of
showing that there are no material facts in dispute,
Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and
can discharge this burden by demonstrating that there is an
absence of evidence to support the nonmoving party's case,
Celotex, 477 U.S. at 325. The nonmoving party then must
come forward with "specific facts showing that there is a
genuine issue for trial," Fed. R. Civ. P. 56(e), as to
every element "essential to that party's case, and on which
that party will bear the burden of proof at trial."
Celotex, 477 U.S. at 322.

The Court "must resolve all ambiguities and draw
all reasonable inferences in favor of the party defending
against the motion." Eastway Constr. Corp. v. New York,
762 F.2d 243, 249 (2d Cir. 1985). Moreover, because Lopes
is proceeding pro se, the Court has an obligation to "read
his supporting papers liberally, and . . . interpret them
to raise the strongest arguments that they suggest."
Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).
However, the court must inquire whether "there is

8

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. If there is not, summary judgment is proper. See id. at 249-50.

## A Factual Issue Has Been Presented With Respect to the Hostile Environment and Constructive Discharge Claims

Granting Lopes the inferences to which he is entitled as the party opposing a motion for summary judgment, the Court finds that his version of the facts, more specifically the requirement that he submit to a customer's sexual demands in order to keep his job, if true, appear to set forth a claim of sexual harassment such that a reasonable fact-finder could conclude that Lopes was subject to a hostile working environment and constructive discharge.

Although Lopes alleges in the Amended Complaint that he was discriminated against based on his religion, the Amended Complaint fails to set forth a basis for such claim. (Compl. ¶ 7). At his deposition, he explained that his religion claim was premised on Sciacchitano's alleged sexual harassment and Lam's purported condonation of the

9

same: "At the moment that Mr. Vincenzo sexual harass me .
. . he offend my religion. At the moment . . . Mr. K.C.
Lam put[] me in the [position] to . . . have sex with Mr.
Vincenzo . . . to have my job back, he insult my religion."
(Lopes Dep. at 210). The Defendants have subsumed the
religion claim into the sex discrimination claim. (Mem. in
Supp. at 6 n.6.)

Similarly, although Lopes alleges in the Amended
Complaint that he was discriminated against based on his
national origin and color, the Amended Complaint fails to
set forth a basis for such claims. (Compl ¶ 7).
Defendants have also subsumed Lopes' national origin and
color claims into his race claim, which Lopes explained at
his deposition is premised on Sciacchitano's alleged
references to him a "jungle boy" and "third-world country
boy." (Lopes Dep. at 207-08).

In order to establish a prima facie case of
hostile work environment predicated on sex and/or race,
Lopes has submitted evidence that: (1) the harassment was
sufficiently severe or pervasive to alter the terms or
conditions of his employment and created an abusive working
environment; and (2) a specific basis exists for imputing

10

the harassment to the employer. See Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997); Moran v. Fashion Inst. Of Tech., No. 00 Civ. 1275 (RLE), 2002 U.S. Dist. LEXIS 19387, at *13 (S.D.N.Y. Oct. 7, 2002) (citing Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)).

Lopes claimed at his deposition that, on two separate occasions, under cover of the crowded Restaurant, Sciacchitano blew on his neck and touched his waistline as he was carrying supplies to and from the bar. (Lopes Dep. at 150-52; Def. 56.1 ¶ 11). Although he did not actually see Sciacchitano blow air on his neck or touch his waistline, he just "felt that it was [Sciacchitano]." (Lopes Dep. at 150-52; Def. 56.1 ¶ 12).

Lopes has also claimed that Sciacchitano referred to him as "she," "her," "jungle boy," and "third-world country boy" in the middle of the Restaurant in front of customers and employees (Compl. at 2, 14-15; Lopes Dep. at 114-20, 146-49, 165, 207; Deposition Transcript of Natalia Lam dated July 17, 2007 ("N. Lam Dep.") at 11; Lam Aff. ¶ 8). Lopes has adduced no evidence that any of the Restaurant's employees ever heard Sciacchitano make such comments and conceded at his deposition that Sciacchitano's

alleged references to him were not made to him directly,
but were part of conversations Sciacchitano was having with
third parties. (Lopes Dep. at 114; Def. 56.1 ¶ 14). As
these claims form the sole basis of Lopes' race
discrimination claim, that claim is dismissed.

Lopes has also stated that Sciacchitano loudly
and openly blew kisses at him in front of employees and
customers, and that this unwelcome behavior provoked Lopes
to confront Sciacchitano on June 28, 2005. (Compl. ¶¶ 6,
26; Lopes Dep. 153-56). Lopes stated in his Amended
Complaint and at his deposition that because the Restaurant
was new and needed regular customers, he went along with
Sciacchitano's behavior and continued to perform his job as
usual. (Compl. at ¶¶ 3-4; Lopes Dep. at 122, 134; Def.
56.1 ¶ 18).

If Lopes' version of his final conversation with
Lam as recounted above is believed, continued submission to
the conduct of Sciacchitano was a condition of his
employment. The Defendants have challenged this version of
the conversation, as well as Lopes' credibility, but his
assertions have created a factual dispute.

Although Title VII is not a general civility

code, Oncale v. Sundowner Offshore Servs., Inc., 523 U.S.

75, 80 (1998) (citing Harris v. Forklift Sys., Inc., 510

U.S. 17, 21 (1993)), the conduct as described by Lopes goes

beyond "ordinary socializing in the workplace—such as male-

on-male horseplay or intersexual flirtation," which should

not mistaken for unlawful harassment. Id.; see also Dawson

v. Bumble & Bumble, 246 F. Supp. 2d 301, 329 (S.D.N.Y.

2003), aff'd, 398 F.3d 211 (2d Cir. 2005) ("[C]onduct

founded on 'the ordinary tribulations of the workplace,

such as the use of abusive language, gender-related jokes,

and occasional teasing' is not actionable under the

discrimination laws.") (citation omitted).

The objective severity of harassing conduct

should be evaluated on the totality of the circumstances.

As the Supreme Court explained in Oncale:

> In same-sex (as in all) harassment cases, that
> inquiry requires careful consideration of the
> social context in which particular behavior
> occurs and is experienced by its target. . . .
> The real social impact of workplace behavior
> often depends on a constellation of surrounding
> circumstances, expectations, and relationships
> which are not fully captured by a simple
> recitation of the words used or the physical acts
> performed. Common sense, and an appropriate
> sensitivity to social context, will enable courts

13

and juries to distinguish between simply teasing
or roughhousing among members of the same sex,
and conduct which a reasonable person in the
plaintiff's position would find severely hostile
or abusive.

Oncale, 523 U.S. at 82.

Whether certain conduct is objectively hostile,
courts consider a variety of factors, including "the
frequency of the discriminatory conduct; its severity;
whether it is physically threatening or humiliating, or a
mere offensive utterance; and whether it unreasonably
interferes with an employee's work performance." Harris,
510 U.S. at 23; see also Dawson, 246 F. Supp. 2d at 326.
However, "the environment need not be 'unendurable' or
'intolerable.'" Terry v. Ashcroft, 336 F.3d 128, 148 (2d
Cir. 2003) (citing Whidbee v. Garzarelli Food Specialties,
Inc., 223 F.3d 62, 70 (2d Cir. 2000)) (internal quotation
marks and citation omitted). "'The fact that the law
requires harassment to be severe or pervasive before it can
be actionable does not mean that employers are free from
liability in all but the most egregious cases.'" Id.

An employer can be held liable for the harassing
acts of non-employees if a plaintiff "adduce[s] evidence

tending to show that [the employer] either failed to provide a reasonable complaint procedure or that it knew of [the] harassment by [a non-employee, such as a customer] and failed to take any action." Heskin v. Insite Advertising, Inc., 03 Civ. 2508 (GBD)(AJP), 2005 U.S. Dist. LEXIS 2346, at * 75-76 (S.D.N.Y. Feb. 22, 2005) (citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766-67 (2d Cir. 1998), abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)); see also id., 2005 U.S. Dist. LEXIS 2346, at * 72-75 (collecting cases). Here, Lopes has inferred that his continued tolerance of the offensive conduct was a condition of employment.

Based on his version of the final conversation with Lam, Lopes concluded that he was instructed to have sex with Sciacchitano. (Am. Compl. ¶¶ 53-54; Lopes Dep. at 184-85, 206-07, 210). Although "[a] Title VII harassment claim cannot rest on . . . unsubstantiated surmises and subjective conclusions," Dawson, 246 F. Supp. 2d at 327, Lopes has alleged a conversation that explicitly indicated that Defendants encouraged, condoned, or accepted Sciacchitano's alleged conduct.

15

Furthermore, if true, Lam's comments during the June 29 meeting support Plaintiff's constructive discharge claim. "A plaintiff's . . . claim for constructive discharge requires the plaintiff to prove that [his] employer deliberately and discriminatorily created work conditions 'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir. 2006) (citing Pa. State Police v. Suders, 542 U.S. 129, 141 (2004)). To prevail on a claim of constructive discharge, a plaintiff must show "deliberate action on the part of the employer. . . . Something beyond mere negligence or ineffectiveness is required." Mack v. Otis Elevator Co., 326 F.3d 116, 128 (2d Cir. 2003) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000) (citation and internal quotation marks omitted)). Here, if Plaintiff's account of the June 29 meeting is true, Lam's conditioning of Plaintiff's continued employment on his submission to Sciacchitano's harassment, up to and including a request for sexual favors, would constitute deliberate action rendering Plaintiff's workplace intolerable. As material issues of fact remain regarding the June 29 meeting, summary judgment on the constructive discharge claim is inappropriate.

Although Lopes' testimony regarding his alleged complaints to Lam are unsupported by any other evidence of record, he has claimed in the Amended Complaint that "begin[ning in] May 2005, [he] made several complaints to . . . Lam regarding" Sciacchitano's alleged harassment. He testified at his deposition that he complained to Lam about Sciacchitano's alleged conduct starting in April 2005 (Am. Compl. ¶¶ 1-2; Lopes Dep. at 112-14, 121-22, 124, 209-12) and that he told Lam about the sidewalk incident in May 2005, during a meeting that he admittedly omitted from the sixty-eight paragraphs of his Amended Complaint. (Lopes Dep. at 112-13, 128, 144-45). The Defendants have appropriately pointed out inconsistencies in his deposition and the Amended Complaint. The Defendants also note additional statements by Lopes which are said to have been duplicitous. These credibility issues are inappropriate for resolution on the instant motion.

**Title VII Claims are Dismissed as Against Lam**

An individual supervisor cannot be held personally liable under Title VII. See Schiano, 445 F.3d at 608 (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995) (abrogated on other grounds by Burlington

Indus., Inc. v. Ellerth, 524 U.S. 742, (1998))).

Therefore, Lopes' federal law claims must be dismissed as against Defendant Lam.

However, individual defendants may be sued in their personal capacities under the New York State and City laws. See Feingold v. New York, 366 F.3d 138, 157-59 (2d Cir. 2004). An individual may be liable under the NYSHRL either as an employer, under Section 296(1), or as an "aider or abettor," under Section 296(6). See N.Y. Exec. Law §§ 296(1), (6). The New York Court of Appeals has held that an employee is not individually subject to suit under § 296 of the HRL as an employer 'if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.'" Prince, 427 F. Supp. 2d at 384 (quoting Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542 (1984)). However, irrespective of an employee's power to do more than carry out personnel decisions made by others, an employee can be held liable for acts which "aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6)); see Tomka, 66 F.3d at 1317.

18

In Feingold, 366 F.3d at 158, the Second Circuit reversed a district court's granting of summary judgment under the NYSHRL and the NYCHRL to individual supervisors, in part because the Plaintiff presented sufficient evidence to create a triable issue of fact as to whether the individual supervisors had "actually participate[d]" in the conduct giving rise to the discrimination claims by, inter alia, refraining from acting to remedy discriminatory behavior toward the Plaintiff employee of which they were aware. Noting that "[t]he same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL," the court held that the claims against the individual defendants could proceed under both the city and state laws. Id. at 158-59; see also Tomka, 66 F.3d at 1317 (2d Cir. 1995).

Here, as Lopes has created a triable issue of fact as to whether Lam "actually participated" in the conduct giving rise to Lopes' claims, his claims against Lam under the NYSHRL and NYCHRL will proceed.

**Damages Have Been Adequately Alleged**

Lopes must prove his entitlement to compensatory damages. See e.g., Fowler v. New York Transit Auth., No. 96 Civ. 6796, 2001 WL 83228, at \*10 (S.D.N.Y. Jan. 31, 2001) ("[C]ompensatory damages must be proven and not presumed.") (internal quotation marks and citation omitted). Here, he has alleged emotional distress and constructive discharge.

In support of his claim for compensatory damages due to emotional distress, Lopes has cited a letter written at his request by Dr. Syed Zaidi, a former medical resident at Metropolitan Hospital Center, dated May 2, 2006, which states that Lopes "is evaluated at our Mental Health Clinic today. He is diagnosed as PTSD – depressed mood with psychiatric features." (Decl. of Brian G. Cesaratto ("Cesaratto Decl.") Ex. G; Def. 56.1 ¶ 24).

The Defendants have noted that Lopes testified that he never told Dr. Zaidi about Sciacchatano's alleged harassment or about the circumstances surrounding his termination from the Restaurant (Lopes Dep. at 39), but that he told Dr. Zaidi that the loss of his job/income, his

age, life in a big city, and the events of September 11th
were making him depressed, stressed, and disrupting his
ability to sleep and concentrate in school. (Lopes Dep. at
40-45). Lopes also testified that he lied to Dr. Zaidi so
that he could obtain certain medication. Id.

Lopes has also relied on a letter written at his
request by Fay Elahi, a Counselor for Students with
Disabilities at Hunter College's Office of AccessABILITY
("Disability Office"), dated May 4, 2007, which states that
Lopes "is registered with the Office of Disability at
Hunter College since May 2006." (Cesaratto Decl. Ex. E;
Def. 56.1 ¶ 27). Lopes has testified that his
registration with the Disability Office was based on Dr.
Zaidi's letter and his admission to suffering from
depression and PTSD. (Lopes Dep. at 72). Lopes further
testified that he registered with the Disability Office so
that he could receive an accommodation and be given
additional time to complete his assignments, as well as
opportunities to do extra work, re-take exams, and re-write
papers to improve his grades. (Lopes Dep. at 66-68).
While these letters certainly fail to establish emotional
distress resulting from constructive discharge, an

inference of the existence of the condition raises a
factual contention.

The Defendants also contend that Lopes failed to
mitigate his damages and that a plaintiff in an employment
discrimination case has a duty to exercise reasonable
diligence to locate other comparable employment. See
Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir.
1998).

Since his termination from the Restaurant in June
29, 2005, Lopes has only applied for one job—with the New
York City Department of Sanitation—which he applied for in
the fall of 2005. (Lopes Dep. at 24-25). Instead of
looking for comparable employment, Lopes decided to go back
to school on a part-time basis. (Lopes Dep. at 25).
According to the Defendants, his decision to attend school
instead of searching for work does not fulfill his
obligation to mitigate damages unless the decision to
return to school full-time is made after a diligent, but
unsuccessful, job search. Paluh v. HSBC Bank USA, 409 F.
Supp. 2d 178, 204 (W.D.N.Y. 2006) (citing Dailey v. Societe

Generale, 108 F.3d 451, 456 (2d Cir. 1997)). Whether

Lopes' conduct constituted reasonable diligence remains a

factual issue.

**Conclusion**

For the foregoing reasons, the Plaintiff's Title

VII claims against Defendant Lam are dismissed, as are

Plaintiffs claims alleging discrimination based on race,

color, and/or national origin. Defendants' motion for

summary judgment is otherwise denied.

It is so ordered.

**New York, NY**
**April $15$ , 2008**

**ROBERT W. SWEET**
**U.S.D.J.**